UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DANIEL REYNOLD DEJAGER, a/k/a "Daniel Reynold," a/k/a "Daniel Miester," a/k/a "Danichi,"

    Defendant.

_____/

No. 1:21-cr-00040

HON. ROBERT J. JONKER
Chief United States District Judge

## PLEA AGREEMENT

This constitutes the plea agreement between Daniel Reynold DeJager and the United States Attorney's Office for the Western District of Michigan. The terms of the agreement are as follows:

1.     <u>The Defendant Agrees to Plead Guilty.</u>    The defendant agrees to plead guilty to Counts 1 and 4 of the Indictment. Count 1 of the Indictment charges the defendant with conspiracy to operate an unlicensed money transmitting business in violation of Title 18, United States Code, Sections 371 and 1960. Count 4 of the Indictment charges the defendant with money laundering in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i), (B)(i) and 2.

2.     <u>The Defendant Understands the Crimes.</u>

    a.     In order for the defendant to be guilty of violating Title 18, United States Code, Sections 371 and 1960, the following must be true:

        i.     First, two or more persons conspired, or agreed, to commit the crime of operating an unlicensed money transmitting business.

        ii.    Second, the defendant knowingly and voluntarily joined the conspiracy.

        iii.    Third, a member of the conspiracy did one of the overt acts described in the Indictment for the purpose of advancing or helping the conspiracy.

    b.    In order for the defendant to be guilty of violating Title 18, United States Code, Sections 1956(a)(1)(A)(i), (B)(i) and 2, the following must be true:

        i.    First, the defendant conducted a financial transaction.

        ii.    Second, the financial transaction involved property that represented the proceeds of operating an unlicensed money transmitting business.

        iii.    Third, the defendant knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity.

        iv.    Fourth, the defendant had the intent to promote the carrying on of operating an unlicensed money transmitting business and knew that the transaction was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of operating an unlicensed money transmitting business.

The defendant is pleading guilty because the defendant is guilty of the charges described above.

3. <u>The Defendant Understands the Penalties.</u>

    a.     The statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Sections 371 and 1960, is the following:

        i.     not more than five years of imprisonment;

        ii.     not more than three years of supervised release;

        iii.     a $250,000 fine; and

        iv.     a $100 mandatory special assessment.

    b.     The statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i), (B)(i) and 2, is the following:

        i.     not more than twenty years of imprisonment;

        ii.     not more than three years of supervised release;

        iii.     a $500,000 fine, or twice the value of the property involved, whichever is greater; and

        iv.     a $100 mandatory special assessment.

The defendant agrees to pay the special assessments at or before the time of sentencing unless the defendant affirmatively demonstrates to the Court that he lacks the ability to pay.

4.     <u>Supervised Release Defined.</u>     Supervised release is a period of time following imprisonment during which the defendant will be subject to various restrictions and requirements. The defendant understands that if he violates one or more of the conditions of any supervised release imposed, he may be returned to prison for all or part of the term of supervised release, which could result in the defendant serving a total term of imprisonment greater than the statutory maximum stated above.

3

5. <u>Asset Forfeiture and Financial Accountability.</u> The defendant agrees to fully cooperate with the federal government in the seizure and forfeiture of assets under Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which includes all property, real or personal, which constitutes or is derived from proceeds traceable to violation of Title 18, United States Code, Section 371, conspiracy to violate Title 18, United States Code, Section 1960 (Count 1 of the Indictment), and any property traceable to such property. Specifically, the defendant agrees to forfeit all right, title, and interest in all virtual currency accessible from wallets associated with two Trezor devices seized from The Geek Group on December 21, 2018, comprising at least 0.365 BTC. The defendant further agrees to the entry of a forfeiture money judgment in the amount of $25,000, which sum represents the proceeds derived from the commission of the felony violation alleged in Count 1 of the Indictment, or is traceable thereto, and the money involved in the felony violation alleged in Count 4 of the Indictment, or is traceable thereto.

6. <u>Factual Basis of Guilt.</u> The defendant and the U.S. Attorney's Office agree and stipulate to the following statement of facts which need not be proven at the time of the plea or sentencing, and which does not include all of the facts underlying the defendant's guilt:

    a. The defendant was a consultant for The Geek Group. There he worked with the President, Christopher Allan Boden, a/k/a "Captain," the Executive Director, Leesa Beth Vogt, a/k/a "Lis Bokt," a/k/a "Moose," and Jeremy Swink, among others. The defendant lived in Washington, but periodically travelled to Grand Rapids, Michigan, to meet with Boden and others at The Geek Group.

4

b.  Between approximately March 2017 and December 2018, the defendant and his co-defendants conspired and agreed to operate, and in fact operated, an unlicensed money transmitting business. The defendant purchased bitcoin from exchanges and sent it to Boden to be sold to customers at The Geek Group. U.S. currency used to purchase bitcoin, including the proceeds of these sales, was sent to the defendant using a Chase Bank account with a number ending in 6810, or by other means. The defendants recorded deposits in the Chase Bank account by sending Facebook messages to each other. The defendant took a profit from the proceeds and used the rest to purchase more bitcoin to be sold in the scheme. The defendant and his co-defendants sold more than $740,000 in bitcoin. The defendant and his co-defendants kept each financial transaction—both with the banks and the exchanges—below $10,000 so as to avoid detection by the banking system. The defendant and his co-defendants never registered as a money services business or money transmitter with the United States Department of the Treasury.

c.  The defendant sometimes "mixed" or "tumbled" the bitcoin—that is, he laundered it—before sending it to Boden so as to conceal its origin. In one of these instances, on May 26 and 27, 2017, the defendant mixed 2.92 BTC before sending it to Boden. He did so by using a mixing service. The bitcoin represented the proceeds of operating an unlicensed money transmitting business, and the defendant knew this. In mixing the bitcoin, the defendant intended to conceal and disguise the origin of the bitcoin and promote the operation of the unlicensed money transmitting business.

5

7. <u>The United States Attorney's Office Agrees.</u>

a. <u>Dismissal of Other Counts/Charges.</u> The U.S. Attorney's Office agrees to move to dismiss the remaining counts of the Indictment against the defendant at the time of sentencing. The defendant agrees, however, that in determining the sentence the Court may consider the dismissed counts in determining the applicable range under the United States Sentencing Guidelines ("Guidelines"), where the sentence should fall within the applicable Guidelines range, and the propriety of any departure from the calculated Guidelines range. By this agreement the defendant does not concede that an increased sentence or an upward departure is, in fact, warranted.

b. <u>Acceptance of Responsibility.</u> The U.S. Attorney's Office agrees not to oppose the defendant's request for a two-level reduction of his offense level for acceptance of responsibility under Section 3E1.1(a) of the Guidelines. However, the U.S. Attorney's Office reserves the right to object to the defendant's request if it subsequently learns of conduct by the defendant that is inconsistent with the criteria set forth in the Commentary to Section 3E1.1. Should the Court grant a two-level reduction as provided herein, the U.S. Attorney's Office will move the Court to grant an additional one-level reduction if the adjusted offense level is 16 or greater pursuant to Section 3E1.1(b).

8. <u>The Sentencing Guidelines.</u> The defendant understands that, although the Guidelines are not mandatory, the Court must consult the Guidelines and take them into account when sentencing the defendant. The defendant understands that the Court, with the aid of the presentence report, will determine the facts and calculations relevant to sentencing. The defendant understands that the defendant and the defendant's attorney will have the opportunity

6

to review the presentence report and to make objections, suggestions, and recommendations concerning the calculation of the Guidelines range and the sentence to be imposed. The defendant further understands that the Court shall make the final determination of the Guidelines range that applies in this case, and may impose a sentence within, above, or below the Guidelines range, subject to the statutory maximum penalties described elsewhere in this agreement. The defendant further understands that disagreement with the Guidelines range or sentence shall not constitute a basis for withdrawal of the plea.

9. **There is No Agreement About the Final Sentencing Guidelines Range.** The defendant and the U.S. Attorney's Office have no agreement as to the applicable Guidelines factors or the appropriate Guidelines range. Both parties reserve the right to seek any sentence within the statutory maximum, and to argue for any criminal history category and score, offense level, specific offense characteristics, adjustments, and departures.

10. **Waiver of Constitutional Rights.** By pleading guilty, the defendant gives up the right to persist in a plea of not guilty and the right to a speedy and public trial by jury or by the Court. As a result of the defendant's guilty plea, there will be no trial. At any trial, whether by jury or by the Court, the defendant would have had the following rights:

    a. The right to the assistance of counsel, including, if the defendant could not afford an attorney, the right to have the Court appoint an attorney to represent the defendant.

    b. The right to be presumed innocent and to have the burden of proof placed on the government to prove the defendant guilty beyond a reasonable doubt.

    c. The right to confront and cross-examine witnesses against the defendant.

  d. The right, if the defendant wished, to testify on the defendant's own behalf and present evidence in opposition to the charges, including the right to call witnesses and to subpoena those witnesses to testify.

  e. The right not to be compelled to testify, and, if the defendant chose not to testify or present evidence, to have that choice not be used against the defendant.

  f. By pleading guilty, the defendant also gives up any and all rights to pursue in this Court or on appeal any affirmative defenses, Fourth Amendment, or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

11. **Waiver of Other Rights.**

  a. **FOIA Requests.** The defendant hereby waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

  b. **Hyde Waiver.** The defendant acknowledges, by his voluntary admission of guilt, that the position of the U.S. Attorney's Office in this case is not vexatious, frivolous, or in bad faith, and he hereby disclaims and waives any right to make any claim for attorney fees.

12. **The Court is Not a Party to this Agreement.** The defendant understands that the Court is not a party to this agreement and is under no obligation to accept any recommendation by the U.S. Attorney's Office or the parties regarding the sentence to be imposed. The defendant further understands that, even if the Court ignores such a

recommendation or imposes any sentence up to the maximum established by statute, the defendant cannot, for that reason, withdraw his guilty plea, and he will remain bound to fulfill all his obligations under this agreement. The defendant understands that no one—not the prosecutor, the defendant's attorney, or the Court—can make a binding prediction or promise regarding the sentence the defendant will receive, except that it will be within the statutory maximum.

13. <u>This Agreement is Limited to the Parties.</u>   This agreement is limited to the U.S. Attorney's Office for the Western District of Michigan, and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authority. This agreement applies only to crimes committed by the defendant. This agreement does not apply to or preclude any past, present, or future forfeiture or civil actions.

14. <u>Consequences of Breach.</u>   If the defendant breaches any provision of this agreement, whether before or after sentencing, the United States shall have the right to terminate this agreement, or deny any or all benefits to which the defendant would otherwise be entitled under the terms of this agreement. In the event that the United States elects to terminate this agreement, the agreement shall be considered null and void, and the parties shall return to the same position they were in prior to the execution of this agreement, as though no agreement ever existed. In such an event, the defendant shall remain liable for prosecution on all original charges, and the United States shall be free to bring such additional charges as the law and facts warrant. The defendant further agrees to waive and forever give up his right to raise any claim that such a prosecution is time-barred if the prosecution is brought within one (1) year of the breach that gives rise to the termination of this agreement.

15. <u>This is the Complete Agreement.</u> This agreement has been entered into by both sides freely, knowingly, and voluntarily, and it incorporates the complete understanding between the parties. No other promises have been made, nor may any additional agreements, understandings, or conditions be entered into unless in a writing signed by all parties or on the record in open court.

ANDREW BYERLY BIRGE
United States Attorney

9/29/21
Date

JUSTIN M. PRESANT
Assistant United States Attorney

I have read this agreement and carefully discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. My attorney has advised me of my rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement. No promises or inducements have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

9-29-2021
Date

DANIEL REYNOLD DEJAGER
Defendant

I am Daniel Reynold DeJager's attorney. I have carefully discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

9-29-2021
Date

BRETT A. PURTZER
Attorney for Defendant

10